## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEENAN M. MOSCO, )
)
Plaintiff, )
) Civil Action No. 10-1346
v. )
) Chief Judge Gary L. Lancaster
MICHAEL J. ASTRUE, )
Commissioner of Social Security, ) Electronic Filing
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

December $\underline{3}$, 201$\cancel{1}$

### I. INTRODUCTION

Keenan M. Mosco ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act"). This matter comes before the court on cross motions for summary judgment. (ECF Nos. 9, 13). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED.

## II.    PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI with the Social Security Administration on April 28, 2008, claiming an inability to work due to disability as of July 1, 2003.  (R. at 133 – 48)[1].  Plaintiff was initially denied benefits on August 14, 2008.  (R. at 58 – 79).  A hearing was scheduled for March 12, 2010, and Plaintiff appeared to testify represented by counsel.  (R. at 22 – 54).  A vocational expert, Plaintiff's father, and Plaintiff's friend also testified.  (R. at 22 – 54).  The Administrative Law Judge ("ALJ") issued her decision denying benefits to Plaintiff on March 26, 2010.  (R. at 10 – 18).  Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on September 17, 2010, thereby making the decision of the ALJ the final decision of the Commissioner.  (R. at 1 – 6).

Plaintiff filed his Complaint in this court on October 15, 2010.  (ECF No. 3).  Defendant filed his Answer on December 20, 2010.  (ECF No. 6).  Cross motions for summary judgment followed.  (ECF Nos. 9, 13).

## III.   STATEMENT OF THE CASE

The facts relevant to the present case are limited to those records that were available to the ALJ when rendering her decision.  All other records newly submitted[2] to the Appeals Council or this court will not be considered, here, and will not inform the decision of this court.  *See Matthews v. Apfel*, 239 F.3d 589, 592, 594 – 95 (3d Cir. 2001).[3]

---

[1]      Citations to ECF. Nos. 7 – 7-9, the Record, *hereinafter*, "R. at __."

[2]      Exhibits 10E, 15F – 19F; R. at 212 – 14, 347 – 554.

[3]      The Appeals Council may decline review of a claimant's case when the ALJ's decision is not at odds with the weight of the evidence on record.  *Matthews*, 239 F.3d at 592.  In such a case, a district court can only review that evidence upon which the ALJ based his or her decision.  *Id.* at 594 – 95.  As a result, new evidence presented by a claimant to the Appeals Council, but not reviewed, is not within the purview of a district court when judging whether substantial evidence supported an ALJ's determination.  *Id.*  Such is the case at present.  Additionally,

## A. General Background

Plaintiff was born on May 5, 1981, and was twenty-eight years of age[4] at the time of the administrative hearing. (R. at 28). Plaintiff was unmarried, and lived in his parents' home. (R. at 28). Plaintiff graduated from high school, but had no post-secondary education or training. (R. at 28 – 29). His work history included short stints as a waiter/ restaurant host, car dealership salesman, retail sales representative, and parking attendant. (R. at 171). Plaintiff had not held any substantial gainful employment since July 2003, and had subsisted on food stamps and support from his parents. (R. at 29). Plaintiff received health insurance through the state. (R. at 29).

Plaintiff claimed that he could not maintain employment due to complications related to diabetes, depression, scoliosis, and hypothyroidism. (R. at 163). In his personal report of functional capability he claimed that he must constantly check his blood sugar levels, rest his back frequently, and rely on his parents to dress, bathe, feed, and otherwise provide general care for him when his blood sugar is very low. (R. at 184 – 94). Plaintiff claimed that his conditions left him weak and tired on a daily basis. (R. at 184 – 94). He claimed that he was no longer capable of engaging in activities such as walking, yardwork, and cooking on a reliable basis. (R. at 184 – 94). He did manage to prepare microwavable meals every day, he helped mow the lawn, and he took a daily walk. (R. at 184 – 94). However, he spent most days watching television. (R. at 184 – 94). Plaintiff claimed that he managed his finances poorly, but that he could count change. (R. at 184 – 94).

Plaintiff failed to make the required showing under *Szuback v. Secretary of Health and Human Services*, 745 F.2d 831 (3d Cir. 1984), for remand to reconsider the case in light of newly submitted evidence not considered by the ALJ when making her decision. Therefore, the case will not be remanded for this purpose, and Exhibits 10E and 15F – 19F (R. at 212 – 14, 347 – 554) will not be discussed.

⁴    Plaintiff is defined as a, "Younger Person," at all times relevant to this determination. 20 C.F.R. §§ 404.1563, 416.963.

3

## B. Treatment History

The record reflects that Plaintiff was seen by his primary care physician Edward P. Johnson, M.D. on January 15, 2003 at a regularly scheduled check-up for Plaintiff's type I diabetes, following a hiatus of several months. (R. at 283). Plaintiff was noted to be "doing really well." (R. at 283). Plaintiff's blood-sugar was well-controlled and Plaintiff was "feeling very well." (R. at 283). Plaintiff had no complaints regarding his physical health. (R. at 283). In addition to his diabetes, Plaintiff was noted to suffer from hypothyroidism. (R. at 283).

Dr. Johnson made similar notations regarding Plaintiff's health in June of 2003; although, he noted that Plaintiff's mother expressed concern that Plaintiff may be depressed following an episode during which Plaintiff stayed in bed all day. (R. at 284). In September 2004, Plaintiff complained of chronic fatigue and depression. (R. at 285). Dr. Johnson indicated that Plaintiff's symptomology met the requirements for major depression, but that he was otherwise healthy. (R. at 285). There was no change in the status of Plaintiff's diabetes. (R. at 285).

On December 27, 2004, Plaintiff was found unconscious at a local gas station. (R. at 217 – 18). He was subsequently admitted to the emergency department at a local hospital. (R. at 217 – 18). He was driving home from a gathering with friends, when he pulled into a gas station and blacked-out. (R. at 217 – 18). Upon arrival at the hospital, his blood sugar levels were found to be very low. (R. at 217 – 18). Plaintiff's condition responded to medication. (R. at 217 – 18). Plaintiff was otherwise healthy. (R. at 217 – 18). He was diagnosed as having suffered insulin shock with hypoglycemia and unconsciousness. (R. at 217 – 18). Cocaine and amphetamines had also been found in his system. (R. at 217 – 18).

On January 24, 2005, Dr. Johnson completed a Pennsylvania Department of Public Welfare Employability Assessment Form for Plaintiff. (R. at 296). Dr. Johnson indicated that

Plaintiff had been temporarily disabled from all work, beginning December 27, 2004 and ending December 28, 2004, due to symptoms stemming from diagnoses of type I diabetes and hypoglycemia. (R. at 296). On April 27, 2005, Dr. Johnson completed another Pennsylvania Department of Public Welfare Employability Assessment Form for Plaintiff. (R. at 294). Dr. Johnson stated that Plaintiff was temporarily disabled from all work, beginning April 1, 2005 and ending October 31, 2005, as a result of symptoms stemming from diagnoses of depression, type I diabetes, and scoliosis. (R. at 294).

Plaintiff was not seen again by Dr. Johnson until March 13, 2006. (R. at 287). Plaintiff's issues with chronic fatigue and depression were noted, but Plaintiff was considered to be doing fairly well on prescription medication. (R. at 287). Plaintiff's diabetes also appeared to be controlled with medication; Plaintiff experienced few bouts of high blood sugar, and no bouts of low blood sugar. (R. at 287). Plaintiff was otherwise healthy. (R. at 287). Additionally, although he was asked by Plaintiff to fill out a disability form several months before the date of his check-up, Dr. Johnson declined to fill out another because he felt that Plaintiff was employable. (R. at 287).

Plaintiff was admitted to the hospital on January 22, 2008 due to multiple methicillin-resistant staphylococcus aureus ("MRSA") abscesses on his legs and hands following an eighteen month incarceration. (R. at 233 – 42). Plaintiff remained in the hospital for approximately one week while the abscesses were treated. (R. at 233 – 42). Plaintiff was otherwise healthy. (R. at 233 – 42). Plaintiff followed up with Dr. Johnson, and his abscesses were noted to be healing and Plaintiff was generally considered to be doing well. (R. at 289).

Dr. Johnson completed a Pennsylvania Department of Public Welfare Employability Assessment Form for Plaintiff on February 1, 2008. (R. at 292 – 94). Dr. Johnson stated that

5

Plaintiff had been temporarily disabled from all work, beginning January 22, 2008 and ending January 22, 2008, as a result of MRSA abscesses and type I diabetes. (R. at 292 – 94).

Plaintiff underwent a clinical psychology assessment/examination for the purpose of determining eligibility for DIB and SSI with Tim Bridges, Ph.D., on July 15, 2008. (R. at 299). Plaintiff's father drove him to the evaluation because Plaintiff's car had broken down and he did not have the money to repair it. (R. at 299 – 305). Dr. Bridges noted Plaintiff's past diagnoses of diabetes, depression, scoliosis, and hypothyroidism. (R. at 299 – 305). Plaintiff reported that he had not received psychiatric care for his mental condition to that point, and that his mental state was not "any dramatic situation." (R. at 299 – 305).

Dr. Bridges noted Plaintiff's history of arrest and incarceration for drug possession. (R. at 299 – 305). Plaintiff claimed that he was currently sober and attending Narcotics Anonymous. (R. at 299 – 305). Plaintiff reported no behavioral issues or difficulty with authority figures. (R. at 299 – 305). Plaintiff's appearance was unremarkable, he was compliant and cooperative, he was pleasant, and no disturbances in his gait were observed. (R. at 299 – 305). Plaintiff did complain of sleep disturbances, but not of appetite disturbances. (R. at 299 – 305). Plaintiff's thoughts were organized, his memory was intact, he exhibited adequate knowledge, and he did not present any obvious mental health concerns that could impede his daily functioning. (R. at 299 – 305). Plaintiff was not found to be functionally limited by his mental state, in any respect. (R. at 299 – 305).

Plaintiff was examined by Robert Davoli, M.D. on July 16, 2008 on behalf of the Bureau of Disability Determination. (R. at 308 – 12). Plaintiff's past diagnoses of diabetes, depression, scoliosis, and hypothyroidism were noted. (R. at 308 – 12). Plaintiff explained that he was beginning to experience diabetic retinopathy, and claimed that his blood sugar levels were

6

historically poorly controlled. (R. at 308 – 12). Despite allegedly being diagnosed with scoliosis at age ten, Plaintiff indicated that he had played football as a child, and into high school. (R. at 308 – 12). He had never been followed by anyone other than Dr. Johnson for his scoliosis. (R. at 308 – 12). No complications were reported with respect to the hypothyroidism. (R. at 308 – 12).

On physical examination, Dr. Davoli noted Plaintiff's chest exhibited deformity due to his scoliosis. (R. at 308 – 12). Plaintiff did not require the use of an assistive device to walk, however, and he suffered no loss of sensation, had near normal strength, and had depressed, but symmetrical reflexes. (R. at 308 – 12). Straight leg testing was normal, as were gait and station. (R. at 308 – 12). The curvature of the spine due to the scoliosis was marked. (R. at 308 – 12). As a result, Dr. Davoli determined that Plaintiff would likely be limited to lifting ten pounds occasionally, standing and walking two to four hours of an eight hour work day, and sitting two to six hours. (R. at 308 – 12). Plaintiff was not otherwise limited. (R. at 308 – 12).

State agency evaluator V. Raman Kumar, M.D. completed a physical residual functional capacity assessment of Plaintiff on August 1, 2008. (R. at 327 – 33). Plaintiff was diagnosed with diabetes mellitus and moderate scoliosis. (R. at 327 – 33). Based upon the medical record, Plaintiff was found capable of occasionally lifting fifty pounds, frequently lifting twenty-five, standing and walking approximately six hours of an eight hour workday, and sitting six hours. (R. at 327 – 33). Plaintiff was not otherwise limited.

Plaintiff underwent a psychiatric evaluation review in February of 2009. (R. at 337 – 38). At that time, it was noted that Plaintiff had not refilled his prescription medication for the better part of three months and had felt no significant effects. (R. at 337 – 38). After he re-started his

7

medication, objective findings were mostly positive and indicated that Plaintiff was functioning normally. (R. at 337 – 38). He was considered to be "really good." (R. at 337 – 38).

Plaintiff was also seen again by Dr. Johnson in February 2009. (R. at 339). Plaintiff was noted to be doing well, and had no new health complaints or concerns. (R. at 339). His diabetes was considered to be well-controlled over the past year. (R. at 339). Check-ups in April and October 2009 revealed similar findings, except that Plaintiff experienced recurring MRSA infections. (R. at 340 – 41). Plaintiff was otherwise noted to be well. (R. at 340 – 41).

On March 1, 2010, Louis W. Catalano, M.D. summarized his treatment of Plaintiff's scoliosis beginning in June of 2009 for purposes of eligibility for DIB and SSI. (R. at 342 – 46). Dr. Catalano noted Plaintiff's complaints of worsening back pain, as well as radiating pain in the legs. (R. at 342 – 46). Examinations by Dr. Catalano showed that Plaintiff's scoliosis was severe, and may include spinal cord compression. (R. at 342 – 46). Plaintiff was otherwise physically unremarkable, including findings of normal sensation, normal motor strength, and equal reflexes. (R. at 342 – 46).

An electromyography study returned normal results, but a nerve conduction test revealed some abnormality. (R. at 342 – 46). Plaintiff was prescribed a number of medications for treatment and was advised to engage in physical therapy. (R. at 342 – 46). Thoracic paraspinal tenderness was noted, as was diminished strength in the left foot. (R. at 342 – 46). Based upon his observations, Dr. Catalano concluded that Plaintiff was indefinitely disabled from all work as of April 1, 2009. (R. at 342 – 46).

## C. Administrative Hearing

Plaintiff testified that the primary barrier to his successful maintenance of full-time employment was his inability to control his blood-sugar levels. (R. at 31). He described needing

8

to check his blood sugar levels at least twelve times per day – sometimes as often as every hour. (R. at 31). Blood sugar levels alleged dropped dangerously low on a frequent basis. (R. at 33, 37). Often his levels were so poor that he was rendered essentially non-functional; Plaintiff's parents would care for him because he could not perform basic functions on his own. (R. at 33 – 34, 37, 40).

He went on to include his scoliosis as a major hindrance, explaining that his back pain had worsened progressively over the prior three years. (R. at 31). His scoliosis allegedly required him to lie down throughout the day. (R. at 31, 39). Plaintiff claimed that he could stand for no more than one hour and walk for no more than a half-mile, and he allegedly had great difficulty completing simple household tasks such as dusting. (R. at 31, 39). Plaintiff stated that he was advised not to lift more than twenty or twenty-five pounds. (R. at 32). He had periods of numbness in the hands, and significant leg pain. (R. at 32, 39). Breathing was also difficult, at times. (R. at 32, 39).

Plaintiff mentioned his recurrent MRSA infections as an impairment in addition to his diabetes and scoliosis. (R. at 35). He claimed to suffer outbreaks approximately once every two months. (R. at 36). The infections typically cleared with administration of prescribed antibiotics. (R. at 36).

Plaintiff testified that he spent most of his days laying around or playing video games. (R. at 33). He occasionally helped his mother and father with chores. (R. at 33 – 34). He attempted a limited amount of walking near his home for exercise. (R. at 34). He had no hobbies, but did attend church when able. (R. at 34). Plaintiff was capable of driving and maintained his license, but did not have a vehicle for his own use. (R. at 33). He often spent time at a friend's home, where he also primarily laid down and watched television. (R. at 34).

9

Plaintiff acknowledged a history of drug abuse, but claimed to have been sober for approximately three years. (R. at 41).

Following Plaintiff's testimony, the ALJ addressed the vocational expert. The ALJ asked whether an individual of Plaintiff's age, educational experience, and work background could perform any of Plaintiff's former jobs. (R. at 51). The vocational expert replied that the hypothetical person could perform all of Plaintiff's past work. (R. at 51). The ALJ then asked what jobs would be available if the hypothetical person were further limited to light work, could not climb ladders, ropes, or scaffolds, must avoid workplace hazards, must avoid wetness and humidity, and could engage in no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, or crawling. (R. at 52). The vocational expert answered that such a person could perform Plaintiff's past work as a restaurant host or retail sales representative. (R. at 52).

The ALJ then asked whether work would be available if the hypothetical person needed more than the standard ten to fifteen minute morning and afternoon work breaks and thirty to forty five minute lunch break. (R. at 52). The vocational expert replied that no jobs would be available to such a person. (R. at 52). The vocational expert also explained that if there were absences from work in excess of four to ten days per year, all full-time work would be precluded. (R. at 52).

## IV.  STANDARD OF REVIEW

To be eligible for social security benefits under the Act, a claimant must demonstrate to the Commissioner that he or she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death

10

or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability. 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[5] and 1383(c)(3)[6]. Section 405(g) permits a district court to review

---

[5]     Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[6]     Section 1383(c)(3) provides in pertinent part:

the transcripts and records upon which a determination of the Commissioner is based; the court will review the record as a whole. *See* 5 U.S.C. §706. The district court must then determine whether substantial evidence existed in the record to support the Commissioner's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. When considering a case, a district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record; the court can only judge the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 – 97 (1947). The court will not affirm a determination by substituting what it considers to be a proper basis. *Chenery*, 332 U.S. at 196 – 97. Further, "even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings." *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d. Cir. 1986).

---

The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

## V.  DISCUSSION

The ALJ concluded that Plaintiff had medically determinable severe impairments in the way of diabetes and scoliosis. (R. at 12). It was determined that Plaintiff was not disabled because he had the functional capacity to perform light exertional work, although limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, and no exposure to workplace hazards, wetness, and humidity. (R. at 14). Consistent with the testimony of the vocational expert, Plaintiff was found capable of performing past relevant work. (R. at 17 – 18).

Plaintiff objects to the decision of the ALJ, arguing that she did not accord the limitations findings of Drs. Catalano and Davoli proper consideration, and that she improperly excluded depression and hypothyroidism from consideration as severe impairments, the limitations imparted by which – in combination with those created by Plaintiff's diabetes and scoliosis – allegedly rendered Plaintiff disabled from all forms of work. (ECF No. 10 at 3, 6). As an initial matter, the court notes that when rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ adequately met her responsibilities under the law.

13

With respect to the first part of Plaintiff's argument, physicians' opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's medical record – particularly where the findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 355 (3d Cir. 2008); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F.2d 1348, 1350 (3d Cir. 1987)). However, a showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Id.* Additionally, the determination of disabled status for purposes of receiving benefits – a decision reserved for the Commissioner, only – will not be affected by a medical source simply because it states that a claimant is "disabled," or "unable to work." 20 C.F.R. §§ 404.1527(e), 416.927(e).

In the present case, the ALJ rightly noted numerous inconsistencies between the record as a whole, and the findings of Drs. Catalano and Davoli. (R. at 16 – 17). As pointed out by the ALJ, there was no mention in the medical record up and until the individual assessments of Drs. Catalano and Davoli of limitations that approached the severity of what was included in their findings. (R. at 16 – 17). Dr. Johnson, Plaintiff's long-established treating physician, never made findings as severe, and he consistently noted that Plaintiff was doing well and had few health-related complaints. (R. at 13 – 17). Dr. Johnson never found Plaintiff to be unable to work for more than a few days to a few months at a time, and never made specific limitations findings. (R. at 13 – 17). In his evaluation of Plaintiff's medical record, Dr. Kumar also did not make limitations findings as severe as those made by Drs. Catalano and Davoli. (R. at 16 – 17). Generally, Plaintiff received minimal, conservative treatment of his conditions through the majority of the record. (R. at 16 – 17).

14

Further, within the reports of Drs. Catalano and Davoli, there were inconsistencies between the objective findings, and the ultimate conclusions rendered. (R. at 16 – 17). Despite concluding that Plaintiff was completely disabled, indefinitely, Dr. Catalano never included within his earlier findings any specific functional limitations attributable to specific impairments. Dr. Davoli made relatively mild objective findings, aside from noting a significant curvature of a portion of Plaintiff's spine due to scoliosis. There was no indication as to why such findings warranted the limitations listed by Dr. Davoli in terms of lifting, carrying, standing/walking, and sitting. Dr. Kumar made much less severe findings, and Dr. Johnson's notes over years of treatment of Plaintiff never included such severe findings of functional limitation. (R. at 16 – 17). In light of the evidence on the record as a whole, the ALJ properly accorded the findings of Drs. Catalano and Davoli little weight.

The second part of Plaintiff's argument claims that if Plaintiff's depression and hypothyroidism had been considered in conjunction with Plaintiff's other severe impairments, the evidence would clearly had entitled him to DIB and SSI. To support this argument, Plaintiff makes broad assertions about the severity of the limitations stemming from Plaintiff's depression and hypothyroidism. (ECF No. 10 at 6 – 7). In her decision, however, the ALJ carefully analyzed the medical record as it pertained to Plaintiff's depression and hypothyroidism, and concluded that while Plaintiff was diagnosed with such conditions, there was no objective medical evidence indicating that either condition had more than a minimal impact on Plaintiff's ability to function. (R. at 13 – 14). Indeed, Plaintiff fails to point to objective medical evidence to contradict the ALJ's findings. (R. at 13 – 14). There were no indications on the record of any ill-effects felt by Plaintiff as a result of his hypothyroidism. (R. at 13 – 14). Dr. Johnson always indicated that Plaintiff was doing well with respect to his depression, and no other doctor made

15

contrary findings, in this regard. (R. at 13 – 14). In an evaluation with Dr. Bridges, Plaintiff himself stated that his mental state was not "any dramatic situation." (R. at 13 – 14). Considering a record of very conservative treatment for both issues, and given the lack of any functional limitation attributed to either condition by treating sources, the court concludes that the ALJ was correct in excluding these from consideration as severe impairments.

## VI.   CONCLUSION

Based upon the foregoing, substantial evidence supported the determination by the ALJ that Plaintiff was capable of returning to past relevant work, despite his severe impairments. Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [ECF No. 9] is DENIED, Defendant's Motion for Summary Judgment [ECF No. 13] is GRANTED, and the decision of the ALJ is AFFIRMED.

_____,C.J.

Gary L. Lancaster
Chief United States District Judge

cc/ecf: John M. Lewis, Esq.
        230 South Main Street
        205 Coutler Builder
        Greensburg, PA 15601

        Albert Schollaert, Esq.
        United States Attorney's Office
        700 Grant Street
        Suite 4000
        Pittsburgh, PA 15219